NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEITH DUNKLEY, | |
| Plaintiff, | |
| v. | Civil Action No. 06-3501 (JAG) |
| MELLON INVESTOR SERVICES/ VOLT MANAGEMENT, | OPINION |
| Defendants. | |

**GREENAWAY, JR., U.S.D.J.**

Defendant Volt Management Corp. d/b/a Volt Services Group ("Volt"), a staffing agency providing its customers with contingent or temporary workers, has filed a motion to compel arbitration, pursuant to the arbitration provision in its employment agreement with plaintiff Keith Dunkley ("Plaintiff"), a former employee. (Docket Entry No. 10.) Defendant Mellon Investor Services, LLC ("Mellon," and, collectively with Volt, "Defendants"), Volt's customer, to which Plaintiff was assigned, has filed a motion to dismiss the Complaint for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted. (Docket Entry No. 11.) Additionally, Volt has filed a motion to join Mellon's motion to dismiss. (Docket Entry No. 15.) For the reasons stated below, Volt's Motion to Compel Arbitration is granted. Mellon's Motion to Dismiss and Volt's Motion to Join are denied, as moot.

1

**I. PROCEDURAL HISTORY**

On July 28, 2006, Plaintiff filed a Complaint in the United States District Court for the District of New Jersey against both Defendants,[1] along with a corresponding Application to Proceed In Forma Pauperis. The Complaint alleged discrimination in the workplace based on sex and sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, wrongful termination, and retaliation. Plaintiff requested trial by jury and sought compensatory and punitive damages.

On January 3, 2007, Volt filed a motion to compel arbitration or, in the alternative, to strike the jury demand. On the same day, Mellon filed a motion to dismiss the Complaint. On January 12, 2007, Plaintiff filed a response in opposition to Mellon's motion to dismiss, in which he briefly addressed Volt's motion to compel arbitration. (Pl.'s Reply ¶ 8.) On January 18, 2007, Volt filed a motion to join Mellon's motion to dismiss the Complaint.

**II. STATEMENT OF FACTS**

Plaintiff was hired as an employee by Volt, a staffing agency, on October 6, 2004. (Aff. in Support of Volt's Motion to Compel Arbitration by Volt's Director of Human Resources, Kendra Bellman, ("Bellman Decl.") ¶ 3.) As part of Volt's hiring procedure, and as a condition

---

[1] The complaint lists the names of both defendants separated by a "/". In its Motion to Dismiss, Mellon argues that because of this misuse of a separating character, it was not properly served by both the Court and Equal Employment Opportunity Commission ("EEOC"). This argument, however, is without merit, because (a) Mellon received adequate notice of this action on December 4, 2006 (Mellon's Application to Extend Time to Answer ¶ 4), and its request for an extension of time to answer the Complaint was granted on December 15, 2006; and (b) EEOC's report did not find any violations on the face of the Plaintiff's Complaint, so it is not clear that Mellon would have been served by EEOC anyway.

of employment at Volt, Plaintiff signed an employment agreement.  (Bellman Decl. ¶ 3.)  The agreement contained a binding arbitration clause ("Arbitration Agreement"), requiring an employee to arbitrate "any disputes arising out of or relating to" any disputes an employee has with Volt or any of its clients.[2]  (Bellman Decl. Ex. 1)  The arbitration provision appears in paragraph eight of the Agreement, and Plaintiff's signature appears at the bottom of the page.  (Bellman Decl. Ex. 1.)

On November 8, 2004, Plaintiff received an assignment to one of Volt's customers, Mellon, in their (Mellon's) Ridgefield Park, New Jersey office.  Plaintiff worked on that assignment from November 8, 2004 through August 19, 2005.  (Pl.'s Aff. to EEOC Charge of Discrimination ("EEOC Aff.") ¶ 5.)  On August 18, 2005 Plaintiff's "relatively new" male co-worker placed a candy on Plaintiff's desk, allegedly as an invitation to Plaintiff to "indulge in homosexual behavior."  (Compl. ¶ 1.)  Plaintiff requested that the co-worker take the unwanted object back.  After several such requests were ignored, Plaintiff communicated his demand via

---

[2] The exact language of the arbitration provision is as follows:

> Any disputes arising out of or relating to the actions of Volt or any assignment or termination of any assignment, including disputes arising out of or related to the actions of Volt's customers (or customer's employees), shall be settled by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the rules of the American Arbitration Association, in the state where you were employed. The arbitrator may award attorney['s] fees and/or costs to the prevailing party.  Judgment upon the arbitration award may be entered in any court having jurisdiction.  Volt and you hereby waive our respective rights to trial by jury of any cause of action or defense that we may have against each other or against any customer of Volt.  This agreement to arbitrate disputes does not prevent you from filing a charge or claim with any governmental administrative agency as permitted by applicable law.

(Bellman Decl. Ex. 1.)

3

company e-mail to the co-worker's "work partner," with whom Plaintiff had had a lengthy work relationship.  (EEOC Aff. ¶ 6.)

On the following day Mellon terminated Plaintiff's work assignment, alleging "e-mail abuse," without specifying what constituted the abuse.  (EEOC Aff. ¶ 7.)  Following Mellon's termination of the Plaintiff's assignment, Volt terminated Plaintiff's employment "as an at-will employee."  (Motion to Compel Arbitration.)

Following both terminations, Plaintiff filed a discrimination charge with the EEOC, alleging sexual discrimination and retaliation.  On April 18, 2006, the EEOC requested that Plaintiff submit an affidavit with more information.  Plaintiff submitted such affidavit on May 4, 2006.  (Pl.'s Reply Ex. A.)  On June 13, 2006, the EEOC informed Plaintiff that it was unable to find a violation of Title VII of the Civil Rights Act from the information in Plaintiff's affidavit, and therefore dismissed the charge.  (Pl.'s Reply Ex. CC.)  In its correspondence, the EEOC notified Plaintiff that it had issued a right to sue based on the discrimination charge.  Plaintiff filed a Complaint in this Court in a timely manner.

## III. DISCUSSION

Volt's primary assertion is that the Federal Arbitration Act[3] ("FAA") exhibits a strong federal policy favoring arbitration, and requires this Court to stay the proceedings pending arbitration.  According to 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved

---

[3] 9 U.S.C. §§ 1-16.

> in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The first inquiry that this Court must make is whether the parties have made a valid and enforceable agreement to arbitrate their disputes. As previously discussed, paragraph 8 of the employment agreement contains an arbitration provision. The provision requires the parties to settle any disputes arising out of or relating to Plaintiff's employment or termination thereof, through binding arbitration. (Bellman Decl. Ex. 1.) The FAA provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that arbitration provisions in employment contracts are covered by the FAA, with the exception of employment contracts entered into by transportation workers. Circuit City Stores v. Adams, 532 U.S. 105, 119 (2001).

To determine whether the arbitration agreement is valid and enforceable, this Court must apply New Jersey state law contract principles. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under New Jersey law, a contract is enforceable when accompanied by "some consideration." Martindale v. Sandvik, Inc., 173 N.J. 76, 87 (N.J. 2002). New Jersey courts have held that entry into an employment contract constitutes sufficient consideration to render the agreement enforceable. See Martindale, 173 N.J. at 89 ("Although defendant was under no obligation to actually hire plaintiff, defendant's consideration of plaintiff's application, its extension of an offer and the commencement of employment, and thereafter the provision of

compensation and on-going employment constituted sufficient consideration to support the parties' agreement to arbitrate their disputes.").[4]

Next, this Court must address whether the parties' agreement to arbitrate covers arbitration of an employee's statutory claims. An agreement to arbitrate is binding "unless either the Legislature has evinced an intention to preclude a waiver of judicial remedies, or the statutory claim cannot be vindicated in an arbitral forum." Martindale, 173 N.J. at 93 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 472 U.S. 614 (1985)). The Supreme Court has held that statutory discrimination claims may be submitted to compulsory arbitration, pursuant to

---

[4] Although Plaintiff proceeds pro se and fails to make such an argument, this Court will briefly address the validity of the arbitration agreement. Pursuant to the strong policy of the FAA favoring arbitration over litigation, an arbitration agreement can be invalidated only based upon "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996). "It is well settled that courts may refuse to enforce contracts that are unconscionable." Muhammad v. County Bank of Rehoboth Beach, Del., 189 N.J. 1 (2006) (internal quotations omitted). Determination of unconscionability in contract law involves analysis of both procedural unconscionability, which includes various aspects of inequality of bargaining power, and substantive unconscionability, which generally includes unfair and one-sided terms. Muhammad, 189 N.J. at 15.

There are no facts asserted here to support a finding of unconscionability. The arbitration provision is not unfairly one-sided in favor of Volt, which dismisses the substantive unconscionability argument. While there is a clear element of inequality of bargaining power between Volt, the employer, and Plaintiff, the employee, and while the contract is offered on a take-it-or-leave-it basis, such inequality does not rise to the level required to find the arbitration agreement procedurally unconscionable. The Supreme Court has explained that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991). Additionally, as previously described, the Arbitration Agreement is plainly visible on the one-page contract, appearing in paragraph eight, with Plaintiff's signature present after the substance of the Agreement (there is no indication, at all, that Plaintiff was coerced into signing this employment agreement).

Based on this analysis, the law of unconscionability does not support a finding that the Arbitration Agreement is unenforceable.

6

an arbitration agreement.  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

Having found that the parties' agreement is enforceable and covers the present dispute, this Court shall compel arbitration between Plaintiff and Volt, pursuant to the Arbitration Agreement.  The only remaining issue that must be considered, is whether the Arbitration Agreement between Plaintiff and Volt covers Plaintiff's dispute with Mellon, Volt's customer.

"[A] non-signatory cannot be bound to arbitrate unless it is bound 'under traditional principles of contract and agency law' to be akin to a signatory of the underlying agreement." E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194 (3d Cir. 2001) (citing Bel-Ray Co. v. Chemrite Ltd., 181 F.3d 435, 444 (3d Cir. 1999)). In the E.I. Dupont case, the Third Circuit recognized that an intended third party beneficiary of an arbitration agreement may be bound by the agreement's terms.  "[W]hether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary."  E.I. Dupont, 269 F.3d at 195.

Under New Jersey law, "[t]he standard applied by courts in determining third-party beneficiary status is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts."  Rieder Cmtys. v. N. Brunswick, 227 N.J. Super. 214, 222 (N.J. Super. Ct. App. Div. 1988) (internal quotations omitted).  "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution."  Id.

As discussed above, Volt is a staffing agency, providing temporary or contingent employees to its customers nationwide.  Mellon contracted Volt to provide it with such

contingent employees. The present arbitration agreement between Plaintiff and Volt was clearly made for the benefit of Volt's customers. Therefore, Mellon is deemed to be an intended third party beneficiary of the Arbitration Agreement between Plaintiff and Volt. This fact is further evidenced by the language of the Arbitration Agreement, which required Plaintiff to arbitrate all disputes, "including disputes arising out of or related to the actions of Volt's customers (or customer's employees)." (Bellman Decl. Ex. 1.) Although Plaintiff and Volt are the only signatories to the Arbitration Agreement, both parties intended that the employment contract as a whole, and the Arbitration Agreement in particular, benefit Volt's customer to which Plaintiff would be assigned by Volt.

This Court is also satisfied that the Arbitration Agreement covers the present dispute. The language of the Arbitration Agreement specifically covers disputes arising out of "any assignment or termination of any assignment," as a result of actions of Mellon and its employees. (Bellman Decl. Ex. 1.) Since this Court has already determined that Mellon is an intended third party beneficiary of the Arbitration Agreement between Plaintiff and Volt, and since the present claims resulted directly from the actions of Mellon's employees and relate to the termination of Plaintiff's assignment, this Court finds that Plaintiff's claims against Mellon must be resolved in an arbitral forum, pursuant to the Arbitration Agreement.[5]

## CONCLUSION

For the reasons set forth in this opinion, this Court concludes that the Arbitration

---

[5] Since this Court finds that Plaintiff's claims against both of the defendants must be submitted to arbitration, it is unnecessary to address the merits of Mellon's Motion to Dismiss and Volt's Motion to Join. Both of these motions will therefore be denied as moot.

Agreement between Plaintiff and Volt is valid and controlling, that Plaintiff's claims against both Volt and Mellon should be submitted to an arbitral forum, and that Volt's request for a stay of the litigation pending arbitration should be granted.[6] Mellon's motion to dismiss and Volt's motion to join Mellon's motion to dismiss are therefore denied, as moot.

        S/Joseph A. Greenaway, Jr.
        JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: October 12, 2007

---

[6] The FAA requires this Court to stay litigation pending arbitration, once it is determined that the claims are "referable to arbitration under [the parties'] agreement." 9 U.S.C. § 3.